**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Graham Dorsey, | No. CV-22-01297-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 11), the Commissioner's answering brief (Doc. 12), and Plaintiff's reply (Doc. 15), as well as the Administrative Record (Doc. 8, AR), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.     Procedural History

Plaintiff filed an application for disability insurance benefits on July 29, 2019, alleging disability beginning on September 20, 2016. (AR at 17.)  After his claim was denied at the initial and reconsideration phases of administrative review, he requested a hearing.  (*Id.*)  On June 1, 2021, after a telephonic hearing, the ALJ issued an unfavorable decision.  (*Id.* at 17-32.)[1]  The Appeals Council later denied review.  (*Id.* at 1-3.)

---

[1]     An ALJ denied Plaintiff's prior application for disability benefits on September 21, 2016.  (AR at 98-110.)  Such a denial gives rise to a presumption of continuing non-disability on a subsequent application, unless the claimant can show changed circumstances indicating a greater disability.  *Chavez v. Bowen*, 844 F.2d 691, 693 (9th

II.    The Sequential Evaluation Process and Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the

Cir. 1988). The ALJ concluded that Plaintiff made such a showing here. (AR at 20, 26-27.)

1   decision.  *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

2   III.   The ALJ's Decision

3          The ALJ found that Plaintiff had not engaged in substantial, gainful work activity

4   during the period between his alleged onset date and September 30, 2018, which was his

5   date last insured ("DLI"), and that Plaintiff had the following severe impairments as of his

6   DLI: "relapsing and remitting multiple sclerosis; lumbar degenerative disc disease; cervical

7   and thoracic degenerative disease with stenosis; obstructive sleep apnea; insomnia;

8   intermittent/migraine headaches; [and] post-traumatic stress disorder (PTSD)."  (AR at

9   20.)[2]  Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal

10  a listing.  (*Id*. at 22-26.)  Next, the ALJ calculated Plaintiff's RFC as follows:

11          [T]he claimant had the residual functional capacity to perform medium work
            as defined in 20 CFR 404.1567 except he can never climb ladders, ropes
12          and/or scaffolds, can occasionally be exposed to vibrations, can never be
            exposed to unprotected heights and/or moving machinery parts, can never be
13          exposed to strobe lights and/or flashing lights, and requires a moderate noise
            work environment, as defined in the DOT and the SCO.  He is able to
14          understand and remember simple instructions, make simple work related
            decisions, and carry-out simple instructions.  He cannot perform work which
15          requires a specific production rate, such as assembly line work and/or hourly
            quota work.  He can occasionally deal with changes in a routine work setting,
16          and can occasionally deal with supervisors, coworkers and/or the public.

17  (*Id*. at 26.)  As part of this RFC determination, the ALJ evaluated Plaintiff's symptom

18  testimony, concluding that Plaintiff's "medically determinable impairments could

19  reasonably be expected to cause the alleged symptoms; however, the claimant's statements

20  concerning the intensity, persistence and limiting effects of these symptoms are not entirely

21  consistent with the medical evidence and other evidence in the record for the reasons

22  explained in this decision."  (*Id*. at 27-30.)  The ALJ also clarified that "[a]s for medical

23  opinion(s) and prior administrative medical finding(s), in this case there are no relevant

24  opinions in the record."  (*Id*. at 30.)

25          Based on the testimony of a vocational expert, the ALJ concluded that although

26

27  [2]    The ALJ also noted that Plaintiff presented evidence of high blood pressure,
    unspecified substance abuse, gastroesophageal reflux disease, hyperlipidemia, a
28  neurogenic bladder condition, obesity, a history of traumatic brain injury, vertigo, anxiety,
    and hypervigilance.  (AR at 21-22.)

1   Plaintiff could not perform any past relevant work, Plaintiff could perform other jobs that

2   exist in significant numbers in the national economy, including hospital cleaner, bagger,

3   and floor waxer. (*Id.* at 30-32.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id.*

4   at 32.)

5   IV.   Discussion

6          Plaintiff raises four issues on appeal: "1.  Did the ALJ commit harmful legal error

7   in failing to address, thereby rejecting, Plaintiff's treating physician's medical statement?

8   2.  Is the ALJ's failure to provide any rationale in response to Plaintiff's motion to reopen

9   legal error?  3.  Is the ALJ's failure to account for Plaintiff's 'consistent and supported

10  subjective statements' in Plaintiff's RFC finding . . . reversible error?  4.  Does the ALJ's

11  failure to consider the Veterans Administration's disability rating require remand for

12  further administrative proceedings?" (Doc. 11 at 4.)  As a remedy, Plaintiff seeks a remand

13  for a determination of benefits or, in the alternative, for further proceedings. (*Id.* at 18.)

14         A.   **Dr. Subbarao**

15              1.   Standard of Review

16         In January 2017, the SSA amended the regulations concerning the evaluation of

17  medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical*

18  *Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because the new regulations apply to

19  applications filed on or after March 27, 2017, they are applicable here.

20         The new regulations, which eliminate the previous hierarchy of medical opinions,

21  provide in relevant part as follows:

22         We will not defer or give any specific evidentiary weight, including
           controlling weight, to any medical opinion(s) or prior administrative medical
23         finding(s), including those from your medical sources . . . .  The most
           important factors we consider when we evaluate the persuasiveness of
24         medical opinions and prior administrative medical findings are supportability
25         . . . and consistency . . . .

26  20 C.F.R. § 416.920c(a).[3]  Regarding the "supportability" factor, the new regulations

27  _____

28  [3]     Other factors that may be considered by the ALJ in addition to supportability and
    consistency include the provider's relationship with the claimant, the length of the
    treatment relationship, the frequency of examinations, the purpose and extent of the

explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1).  Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.*  With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up).  Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

### 2.    Dr. Subbarao's Statement

On July 16, 2012, VA staff neurologist Jauhtai Joseph Cheng, M.D. completed an "Initial Evaluation of Residuals of Traumatic Brain Injury (I – TBI) Disability Benefits

---

treatment relationship, and the specialization of the provider.  20 C.F.R. § 416.920c(c).

Questionnaire." (AR at 300-13.) When prompted to address the "impact of each of the [Plaintiff's] residual conditions attributable to a traumatic brain injury," Dr. Cheng remarked: "[F]requent headaches (3-4 times/week) that he needs to rest in a dark quiet room for headache to subside." (*Id.* at 310.)

On May 23, 2018, VA psychiatrist Bruno Subbarao, D.O., wrote in a progress note that Plaintiff suffers from headaches "every other day" for "a few hours." (*Id.* at 1098.) Dr. Subbarao noted that "relieving factors" included Fioricet medication. (*Id.*) Dr. Subbarao also stated that, in the past, Plaintiff had "[l]ost jobs" because his headaches "would make him stay home" from work. (*Id.*)

As noted, the ALJ did not analyze Dr. Subbarao's statement as part of the decision. Instead, the ALJ stated that "[a]s for medical opinion(s) and prior administrative medical finding(s), in this case there are no relevant opinions in the record." (*Id.* at 30.)

### 3.   The Parties' Arguments

Plaintiff argues Dr. Subbarao's statement qualifies as a medical opinion and that the ALJ thus erred by "ignor[ing] Dr. Subbarao's medical statement without even comment." (Doc. 11 at 6-7.) Plaintiff also cites, accidentally it seems, Dr. Cheng's statement from 2012 that Plaintiff would need to "rest in a dark, quiet room" during a headache and asserts that "needing to be permitted to rest in a dark, quiet room, on average every other day for a few hours is a reasonable functional limitation as determined by Dr. Subbarao." (*Id.* at 6-7.)

In response, the Commissioner argues that Plaintiff conflated Dr. Subbarao's and Dr. Cheng's statements and contends that Dr. Subbarao's statement does not qualify as a medical opinion because it fails to address what Plaintiff could still do despite his impairments. (Doc. 12 at 5-7.) In the alternative, the Commissioner argues that any error was harmless "as the remaining evidence from Dr. Subbarao's treatment of Plaintiff's headaches shows that they continued to improve." (*Id.* at 7.)

In reply, Plaintiff contends that his citation to Dr. Cheng's note was a "scrivener's error." (Doc. 15 at 1 n.1.) However, Plaintiff then attempts to broaden the scope of his

1   argument by asserting that "the ALJ's failure to address Drs. Bruno Subbarao *or Jauhtai*

2   *Cheng's* medical opinions remains legal error." (*Id*. at 1, emphasis added.) Plaintiff asserts

3   that Drs. Subbarao's and Cheng's statements qualify as medical opinions and that an ALJ

4   should "broadly" consider any statement regarding what a claimant can do. (*Id*. at 3.)

5                              4.   Analysis

6         As noted, Plaintiff at times conflates Dr. Subbarao's May 2018 treatment note (AR

7   at 1098) with a July 2012 medical opinion from Dr. Cheng (*id*. at 310). However, in his

8   opening brief, Plaintiff did not challenge the ALJ's failure to consider Dr. Cheng's opinion.

9   Instead, Plaintiff's sole argument was that "the ALJ ignored Dr. Subbarao's medical

10  statement without even comment." (Doc. 11 at 7.) Thus, Plaintiff has waived any

11  challenge to the ALJ's failure to provide reasons for accepting or rejecting Dr. Cheng's

12  opinion. *Thacker v. Comm'r of Soc. Sec.*, 2012 WL 1978701, *11 (E.D. Cal. 2012) (noting

13  that, as a "general rule, issues raised for the first time in a reply brief are waived" and

14  collecting cases); *Nicoleta S. v. Saul*, 2021 WL 663122, *8 (C.D. Cal. 2021) (same);

15  *Sayavong v. Astrue*, 2012 WL 169767, *9 (E.D. Cal. 2012) (same). *See also Carmickle v.*

16  *Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

17        Turning to Dr. Subbarao, the Court finds no error in the ALJ's failure to treat the

18  assertions in Dr. Subbarao's May 2018 treatment note as a medical opinion. A "medical

19  opinion" is defined by regulation as follows:

20        A medical opinion a statement from a medical source about what you can
21        still do despite your impairment(s) and whether you have one or more
          impairment-related limitations or restrictions in the following abilities: . . .
22        (i) Your ability to perform physical demands of work activities, such as
23        sitting, standing, walking, lifting, carrying, pushing, pulling, or other
          physical functions (including manipulative or postural functions, such as
24        reaching, handling, stooping, or crouching); (ii) Your ability to perform
          mental demands of work activities, such as understanding; remembering;
25        maintaining concentration, persistence, or pace; carrying out instructions; or
26        responding appropriately to supervision, co-workers, or work pressures in a
          work setting; (iii) Your ability to perform other demands of work, such as
27        seeing, hearing, or using other senses; and (iv) Your ability to adapt to
          environmental conditions, such as temperature extremes or fumes.
28

- 7 -

20 C.F.R. § 404.1513(a)(2).  The statement in Dr. Subbarao's treatment note does not qualify as a "medical opinion" under this definition because it does not address Plaintiff's functionality and merely describes the frequency (*i.e.*, "every other day" for a "few hours") of Plaintiff's headaches.  (AR at 1098.)  Even accepting the treatment note at face value, it does not address the extent to which Plaintiff's headaches would affect Plaintiff's ability to work.  In a related vein, although the treatment note stated that, in the past, Plaintiff had "[l]ost jobs" because his headaches "would make him stay home" from work (*id.*), this historical observation was not a statement about "what [Plaintiff] can do despite [his] impairment(s)" and whether Plaintiff would be restricted based on his current condition.

To be clear, the Court does not discount the possibility that a statement in a treatment note could qualify as a "medical opinion" for purposes of the Social Security regulations. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("Marsh further argues that the ALJ erred by not mentioning Dr. Betat's SOAP notes in its written decision.  We agree. . . . Here, the ALJ gave no reasons for not mentioning Dr. Betat or his SOAP notes.  That was error.").  Nevertheless, the particular statement here does not so qualify.

B.  **Requests to Re-Open**

1.   Plaintiff's Requests to Reopen

In August and November 2019 disability reports, Plaintiff wrote: "Please reopen all prior claims."  (AR at 239, 255.)  During the hearing, Plaintiff's counsel argued that Plaintiff had been disabled since 2013.  (*Id.* at 42-43.)  In the decision, the ALJ stated: "With regard to the previously adjudicated period, the principle of *res judicata* applies to the current application, and all denials of prior applications are final and are not reopened herein."  (*Id.* at 18.)

2.   The Parties' Arguments

Plaintiff argues the ALJ erred by failing "to provide any rationale in response to Plaintiff's motion to reopen" and that "[d]isability claimants have a due process right to move to have their claims reopened" so long as those requests are timely and the claimant shows "good cause."  (Doc. 11 at 9.)  Plaintiff acknowledges that "[a] reviewing Court can

at times be unable to review an ALJ's refusal to reopen a prior claim determination" but argues that this prohibition is inapplicable here because (1) "the ALJ made no such denial" in this case beyond summarily asserting that all prior denials were final and that *res judicata* applied; (2) "the Social Security Act in no way preempts a claimant's right to due process under the United States Constitution"; and (3) the ALJ was obligated to state his rationale if he believed Plaintiff had not shown good cause.  (*Id*. at 9-12.)

In response, the Commissioner argues that Plaintiff did not properly preserve his reopening request because "neither Plaintiff nor his attorney at the ALJ hearing made any motion for re-opening of his prior application" and Plaintiff's attorney waived a formal reading of the issues, which shows he "understood and agreed" that the sole issue to be considered was Plaintiff's entitlement to benefits under his August 2019 application. (Doc. 12 at 9.)  The Commissioner contends that Plaintiff's preservation argument "relies solely on two brief statements submitted at the end of disability report documents earlier in the disability appeals process."  (*Id*.)  Alternatively, the Commissioner argues that "[d]espite Plaintiff's lack of action in requesting a reopening of his prior application, the ALJ did make a finding in his decision not to reopen any of Plaintiff's prior claims."  (*Id*. at 10.)  According to the Commissioner, this finding is not subject to judicial review "[b]ecause Plaintiff has not raised a viable constitutional challenge" to the decision.  (*Id*.)

In reply, Plaintiff argues that he adequately preserved his re-opening request by asserting it in his disability reports and that, at any rate, his counsel's assertion during the hearing that he has been disabled since 2013 qualified as an implicit request to re-open. (Doc, 15 at 4-5.)  On the merits, Plaintiff reiterates his contention that the ALJ erred by failing to provide a rationale for denying the reopening request.  (*Id*. at 5.)  Plaintiff asserts that "due process demands the ALJ give reasons for denying Plaintiff's motions to reopen" and accuses the Commissioner of "fail[ing] to respond with anything more than post-hoc rationalization that Plaintiff did not establish good cause for reopening Plaintiff's prior determinations."  (*Id*. at 5-6.)

…

3.   <u>Analysis</u>

Even assuming that the challenge is otherwise preserved, the Court agrees with the Commissioner that it lacks jurisdiction to review Plaintiff's challenge to the denial of his reopening request.  "The Social Security Act grants to district courts jurisdiction to review only 'final decisions' of the Commissioner."  *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008) (quoting 42 U.S.C. § 405(g)).  "Because a denial of a motion to reopen is a discretionary decision, it is not final and, thus, is not generally reviewable by a district court.  The Supreme Court, however, [has] recognized an exception to this rule . . . . [F]ederal subject matter jurisdiction exists where the denial of a petition to reopen is challenged on constitutional grounds.  We understand [that] exception to apply to any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination."  *Id.* (cleaned up).  Here, although Plaintiff asserts in conclusory fashion that he is raising a due process-based constitutional challenge to the denial of his reopening request, he does not develop his constitutional claim in any detail.  More is required under Ninth Circuit law.  *Klemm*, 543 F.3d at 1144 ("A constitutional claim is colorable if it is not wholly insubstantial, immaterial, or frivolous.  A mere allegation of a due process violation is not a colorable constitutional claim.  Rather, the claim must be supported by facts sufficient to state a violation of substantive or procedural due process.") (cleaned up).

Additionally, although the parties' briefing on this issue is sparse, the Court's review of the relevant Ninth Circuit caselaw suggests that the circumstances of this case are easily distinguishable from the circumstances in which claimants have been found to have asserted a colorable constitutional challenge to the denial of a reopening request.  *See, e.g.*, *Klemm*, 543 F.3d at 1144-45 ("An allegation of mental impairment can form the basis of a colorable constitutional claim if the mental impairment prevented the claimant from understanding how to contest the denial of benefits."); *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997) ("Evans alleged that during the time of his 1990 and 1991

applications, he suffered from a mental impairment, which, under SSR 91–5p, amounted to good cause to reopen the prior denials.  This allegation, together with the fact that he was not represented by counsel throughout these earlier proceedings, is sufficient to assert a colorable constitutional claim."); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990) (misleading appeals notice qualified as colorable due process violation that authorized judicial review).  Here, Plaintiff does not contend there was any impediment to his assertion of a reopening request that might raise due process concerns.  Instead, he simply contends that the ALJ's explanation for the denial of his request was insufficiently detailed.

The only case the Court has been able to find that addresses a somewhat analogous claim is *Dexter v. Colvin*, 731 F.3d 977 (9th Cir. 2013).  There, even though the claimant proffered three specific reasons in support of a "late request for hearing," and all three of those reasons were listed in the "SSA regulations" as examples of circumstances where good cause may exist, the ALJ "did not acknowledge" two of those reasons in the course of denying the request.  *Id.* at 980.  Under those circumstances, the Ninth Circuit concluded that "[i]t thus appears that the ALJ did not consider Dexter's potentially valid reasons for her delay.  Due process requires as much."  *Id.*  Here, in contrast, Plaintiff did not purport to identify any specific reason for the reopening request—the two pre-hearing requests tucked into the disability reports were devoid of reasoning and Plaintiff's counsel's "implicit" reopening request during the hearing consisted of the bare assertion that Plaintiff has been disabled since 2013.  Thus, unlike in *Dexter*, there is no reason to suspect the ALJ somehow violated due process by ignoring and refusing to acknowledge a facially plausible reason for reopening.  *Cf. Dragoo v. Comm'r of Soc. Sec. Admin.*, 2020 WL 1703628, *2 (D. Ariz. 2020) ("In *Dexter*, the Court of Appeals found a due process violation where an ALJ had completely failed to address a claimant's facially legitimate reasons for filing an untimely request for a hearing.  The ALJ here, however, committed no similar error. . . . Despite Plaintiff having a full and fair opportunity to raise any additional objections, he did not.  Thus, the Court finds no violation of Plaintiff's due process rights.").

1    C.    **Symptom Testimony**

2         1.    <u>Standard of Review</u>

3         An ALJ must evaluate whether the claimant has presented objective medical

4    evidence of an impairment that "could reasonably be expected to produce the pain or other

5    symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citations

6    omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on

7    a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v.*

8    *Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, the ALJ may "reject the claimant's

9    testimony about the severity of [the] symptoms" only by "providing specific, clear, and

10   convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th

11   Cir. 2015). In this analysis, the ALJ may look to "(1) ordinary techniques of credibility

12   evaluation, such as the claimant's reputation for lying, prior inconsistent statements

13   concerning the symptoms, and other testimony by the claimant that appears less than

14   candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

15   prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v.*

16   *Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284

17   (9th Cir. 1996)).

18        2.    <u>The ALJ's Evaluation Of Plaintiff's Symptom Testimony</u>

19        The ALJ summarized Plaintiff's symptom testimony as follows: "The claimant is

20   alleging disability related to PTSD, multiple traumatic brain injuries, herniated discs,

21   depression, anxiety, hypervigilance, sleep apnea with CPAP use, chronic migraines, high

22   blood pressure, and multiple sclerosis (MS). Because of these conditions, he reportedly

23   experiences pain, inability to focus and maintain attention, poor memory and blurred

24   vision. He testified that he uses a cane for long walks. He also testified that his MS was

25   suspected two years prior to diagnosis. He testified to bouts of vertigo and urinary

26   incontinence. Claimant testified that he has a driver's license with no restrictions but is

27   unable to drive due to brain fog and blurred vision." (AR at 27.) The ALJ declined to fully

28   credit this testimony, explaining that although Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 27-28.)

In support of this conclusion, the ALJ provided a detailed summary of the evidence, noting that although images of Plaintiff's spine confirmed some degree of degenerative disc disease, his examinations showed normal strength and mobility and he reported improvement with physical therapy. (*Id.* at 28.) Next, the ALJ noted that Plaintiff's pain complaints "were usually related to strenuous activity, such as lifting heavy weights in the gym or crashing his motorcycle." (*Id.* at 28, citations omitted.) Next, the ALJ noted that Plaintiff reported improvement from chiropractic treatment. (*Id.*) Next, as for Plaintiff's relapsing-remitting MS diagnosis, the ALJ noted that Plaintiff exhibited normal strength, no focal deficits, and a normal gait in examinations before his DLI. (*Id.*) The ALJ also noted that Plaintiff's MS improved with infusion treatment, such that Plaintiff reported being "able to volunteer, travel by himself, run a support group, exercise in the gym, and go on hikes." (*Id.*) Next, the ALJ discussed Plaintiff's daily activities, which included riding a motorcycle, lifting weights, and engaging in cardiovascular exercise at the gym, and concluded that such activities were "inconsistent with disabling neuromuscular and musculoskeletal problems during the relevant period." (*Id.*) The ALJ also stated that Plaintiff's use of a cane was "unfounded" before his DLI, "as treatment records indicated a normal, unassisted gate in late 2018, and the claimant was not fitted for and instructed in the use of a cane until May 2019." (*Id.*)

Regarding Plaintiff's headaches, the ALJ noted that Plaintiff "reported headaches that occurred every other day, lasted only a few hours, responded favorably to medication, and consisted mostly of 'light throbbing' symptoms." (*Id.* at 29.) The ALJ also noted that Plaintiff reported headaches in 2018 that had occurred for years and had not recently changed, "suggesting no functional deterioration had occurred." (*Id.*) Thus, the ALJ concluded that Plaintiff's "reported headaches are not frequent or severe enough to warrant

disabling off-task and attendance limitations." (*Id.*)

Regarding Plaintiff's mental impairments, including complaints of PTSD and cognitive or memory deficits resulting from MS, the ALJ stated that "[p]sychiatric evaluations and mental status examinations during the relevant period found no significant cognitive impairment or memory deficits that would support his allegations of 'brain fog' from MS, or any serious mental dysfunction from PTSD and depression, providing support for [the] determination that he can do simple work." (*Id.*)  The ALJ also noted that Plaintiff's social functioning was "characterized by a pleasant and cooperative attitude during clinical encounters and demonstrated by his ability to facilitate support groups for others, [and is] adequate for occasional workplace interactions." (*Id.*)  Additionally, the ALJ found Plaintiff's reports of attention and memory deficits to be unsupported, noting Plaintiff's ability to concentrate and respond to questions at the hearing, his ability to give a "coherent history" to a medical professional on one occasion, and his volunteer work with support groups and the Wounded Warrior project. (*Id.* at 29-30.)

### 3.    The Parties' Arguments

Plaintiff argues that "[t]he ALJ in no way found Plaintiff not credible." (Doc. 11 at 12.)  Operating from this premise, Plaintiff argues that the ALJ erred by failing "to account for Plaintiff's 'consistent and supported subjective statements' in Plaintiff's RFC." (*Id.*)  More specifically, Plaintiff argues that the RFC should have included a "limitation recognizing Plaintiff's necessity to take frequent headache breaks" as well as limitations related to Plaintiff's urinary dysfunction. (*Id.* at 12-16.)

In response, the Commissioner argues that "the ALJ's reasons for discounting Plaintiff's statements regarding his physical and mental limitations were supported by substantial evidence, and Plaintiff has failed to identify reversible error." (Doc. 12 at 11.)  More specifically, as for Plaintiff's headaches, the Commissioner argues that "[t]he ALJ thoroughly discussed Plaintiff's headaches—first finding that Plaintiff's headaches constituted a severe impairment and then after a full review of the evidence, properly finding that Plaintiff's headaches did not cause functional limitations to the degree that

Plaintiff alleged." (*Id.* at 12.)  As for Plaintiff's allegations of urinary dysfunction, the Commissioner notes that the ALJ cited records in which Plaintiff repeatedly denied urinary symptoms and only reported such problems after his DLI. (*Id.* at 13.)

In reply, Plaintiff argues that "[t]he ALJ did not provide clear and convincing reasons for rejecting Plaintiff's credible testimony by concluding Plaintiff is less limited than alleged." (Doc. 15 at 6.)  As for his headaches, Plaintiff argues they "are frequent and severe enough to warrant disabling off-task and attendance limitations and the ALJ provided no reason for rejecting Plaintiff's credible testimony." (*Id.* at 7.)  As for his urinary dysfunction, Plaintiff argues that "reporting urinary issues after [his] insured status lapsing does not establish such issues did not exist prior to [his] insured status lapsing" and accuses the Commissioner of "supplant[ing] the role of ALJ" by providing post hoc rationalizations for the ALJ's decision. (*Id.* at 7-8.)

### 4.   Analysis

Plaintiff is not entitled to reversal based on his third assignment of error.  As an initial matter, this marks another instance where Plaintiff improperly attempted, in his reply brief, to expand upon the argument he raised in his opening brief.  In his opening brief, Plaintiff summarized his third assignment of error as follows: "Is the ALJ's failure to account for Plaintiff's 'consistent and supported subjective statements' in Plaintiff's RFC finding . . . reversible error?" (Doc. 11 at 4.)  Plaintiff then argued that "[t]he ALJ in no way found Plaintiff not credible" and suggested that, because the ALJ had deemed his symptom testimony credible, the ALJ was required to incorporate his alleged symptoms into the RFC (and erred by failing to do so). (*Id.* at 12-16.)  However, in his reply brief, Plaintiff changed the heading of his third assignment of error to the following: "The ALJ did not provide clear and convincing reasons for rejecting Plaintiff's credible testimony by concluding Plaintiff is less limited than alleged." (Doc. 15 at 6.)  This is a much different argument than the argument Plaintiff raised in his opening brief, and as a result it is forfeited.  *Thacker*, 2012 WL 1978701 at *11 (E.D. Cal. 2012); *Carmickle*, 533 F.3d at 1161 n.2.

The argument that Plaintiff raised in his opening brief lacks merit.  Although Plaintiff asserts without citation that "[t]he ALJ in no way found Plaintiff not credible" (Doc. 11 at 12), this premise is inaccurate.  The ALJ made an express finding that Plaintiff's symptom testimony was less than fully credible because Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR at 27-28.)  The ALJ then identified multiple reasons for this adverse credibility finding, including that some of Plaintiff's symptom testimony was inconsistent with the objective medical evidence; that some of Plaintiff's claimed symptoms improved with treatment and/or were controlled by medication; that some of Plaintiff's claimed symptoms were inconsistent with Plaintiff's activities of daily living, including riding a motorcycle, lifting weights, and engaging in cardiovascular exercise at the gym; and that Plaintiff made "unfounded" statements about needing to use a cane before the DLI.  (*Id.* at 28-29.)  Given this overall adverse credibility finding, which Plaintiff does not acknowledge (let alone challenge), the ALJ was not required to incorporate all of Plaintiff's claimed symptoms into the RFC.[4]

Finally, even if the argument raised in Plaintiff's reply brief weren't forfeited, it

---

[4]    To the extent Plaintiff's position is that the ALJ needed to go through each one of his claimed symptoms and provide specific, clear and convincing reasons for rejecting his testimony regarding that symptom, any such argument lacks merit.  Plaintiff cites no case endorsing such a rule, which would be inconsistent with the principle that an ALJ may utilize "ordinary techniques of credibility evaluation" when evaluating a claimant's symptom testimony.  *Tommasetti*, 533 F.3d at 1039.  A determination that a witness has testified untruthfully on one topic ordinarily entitles a factfinder to disregard other portions of that witness's testimony.  9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").  Such a rule would also be inconsistent with the principle that any error in an ALJ's evaluation of a claimant's symptom testimony is harmless when (as here) the ALJ identifies multiple other specific, clear and convincing reasons for making an adverse credibility finding.  *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Carmickle*, 533 F.3d at 1162-63 ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . .  [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . .  Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.").

would fail on the merits.  As for Plaintiff's headache-related testimony, the ALJ noted that Plaintiff's migraines responded favorably to medication.  (AR at 23, 29.)  This rationale, which was supported by substantial evidence (*id.* at 1428, 1442, 1483, 1487), constituted a specific, clear and convincing reason for discounting Plaintiff's testimony on that topic. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Morris v. Berryhill*, 358 F. Supp. 3d 875, 884 (D. Ariz. 2019) ("This was a clear and convincing reason for finding plaintiff's symptom statements less than credible because in numerous treatment notes, plaintiff reported that she was doing well, found her medications beneficial, and had no side effects from her medication.").  Similarly, as for Plaintiff's urology-related testimony, the ALJ stated that Plaintiff "denied urinary symptoms at many relevant examinations and only began reporting problems with urinary urgency after expiration of his insured status."  (AR at 21.)  This rationale, which was supported by substantial evidence (*id.* at 387 ["denied urinary prob[l]em"], 722, 1824, 1840), also constituted a specific, clear and convincing reason for discounting Plaintiff's testimony on that topic. *Tommasetti*, 533 F.3d at 1039.

> D.   **VA Rating**

>> 1.   Standard of Review

Under the old SSA regulations, an ALJ was required to provide "persuasive, specific, valid reasons" for rejecting a VA disability rating. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  However, for claims (like Plaintiff's) filed on or after March 27, 2017, this is no longer the rule. *Kitchens v. Kijakazi*, 2023 WL 5965704, *4 (9th Cir. 2023) ("Put simply, the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating.  Thus, it was not error for the ALJ to exclude Kitchen's VA disability rating from her analysis.").  The new regulations provide in relevant part as follows:

> Other governmental agencies and nongovernmental entities . . . such as the Department of Veterans Affairs . . . make disability . . . decisions for their own programs using their own rules.  Because a decision by any other

1
2
3
4
5
6
7

> governmental agency or a nongovernmental entity about whether you are
> disabled . . . is based on its rules, it is not binding on us and is not our decision
> about whether you are disabled . . . under our rules.  Therefore, in claims
> filed . . . on or after March 27, 2017, we will not provide any analysis in our
> determination or decision about a decision made by any other governmental
> agency or a nongovernmental entity about whether you are disabled . . . .
> However, we will consider all of the supporting evidence underlying the
> other governmental agency or nongovernmental entity's decision that we
> receive as evidence in your claim in accordance with § 404.1513(a)(1)
> through (4).

8

20 C.F.R. § 404.1504.

9

> **2.**     **Plaintiff's VA Rating**

10

In May 2013, the VA concluded that Plaintiff's "service-connected disability of

11

PTSD renders him unable to secure and maintain substantially gainful employment."  (AR

12

at 299.)

13

> **3.**     **The Parties' Arguments**

14

Plaintiff argues that although the ALJ was not required to discuss the VA rating, the

15

ALJ was "still obligated to provide analysis of any significant, probative evidence

16

contained in the Veterans' Administration's records."  (Doc. 11 at 17.)  Plaintiff contends

17

that "the ALJ did not even mention the extensive, detailed analysis underlying the VA's

18

determination that Plaintiff is 70 percent service-connected disabled, and in fact

19

unemployable."  (*Id.*)

20

In response, the Commissioner argues that the revised regulations excuse the ALJ

21

from analyzing a disability determination by another governmental agency or non-

22

governmental entity.  (Doc. 12 at 14.)  The Commissioner acknowledges that the ALJ must

23

still consider the evidence underlying that decision but argues that "substantial evidence

24

supports the ALJ's evaluation of the objective medical findings, including medical records

25

from the VA," and that "[t]he decision contains a lengthy and thorough review of the

26

medical evidence which shows that the ALJ considered medical evidence from the VA in

27

making his decision in accordance with 20 C.F.R. § 404.1504.  Plaintiff fails to provide

28

any specific evidence that the ALJ did not consider all the relevant medical evidence,

including the VA evidence, when formulating Plaintiff's RFC." (*Id.* at 14-15.)

In reply, Plaintiff argues that the ALJ did not consider the opinions of several physicians who contributed opinions to Plaintiff's VA compensation and pension examination, including Dr. Cheng. (Doc. 15 at 8-10.)

4.   Analysis

The Court finds no error in the ALJ's consideration of the evidence underlying the VA disability rating. The ALJ provided an unusually comprehensive discussion of the evidence underpinning Plaintiff's several impairments and a cogent rationale for the RFC determination. (AR at 20-30.) There are nearly 2,000 pages of VA treatment notes in this record, and an ALJ "need not discuss *all* evidence presented to her. Rather, she must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (cleaned up). "Medical opinions that predate the alleged onset of disability are of limited relevance," *Carmickle*, 533 F.3d at 1165, and the VA decision was issued approximately three years before the relevant period here. Under the circumstances, the ALJ provided an adequate explanation for why the medical evidence underlying the years-old VA determination did not compel any changes to the RFC.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 18th day of September, 2023.

Dominic W. Lanza
United States District Judge